IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Willie Spates, R50820, | ) |
|         Petitioner, | ) Case No: 17 C 50010 |
| v. | ) Judge Philip G. Reinhard |
| Jacqueline Lashbrook, Warden, | ) |
|         Respondent. | ) |

## ORDER

For the following reasons, petitioner's 28 U.S.C. § 2254 petition [1] is denied. The court declines to issue a certificate of appealability. This matter is terminated.

## STATEMENT-OPINION

On January 17, 2017, petitioner Willie Spates filed a 28 U.S.C. § 2254 petition challenging his state court judgment of conviction. *See* [1][1]. Respondent filed an answer to the petition on June 19, 2017 [17], along with the state court record [18]. Petitioner filed a reply on July 19, 2017. *See* [23]. These matters are now ripe for the court's review. The court will first discuss the relevant factual and procedural background before analyzing petitioner's various claims.

I. Factual and Procedural History.

The following findings of facts are drawn from the state record. *See* [18].[2] On April 23, 2002, petitioner forced his way into his sister's home on West Garden Street in DeKalb, Illinois, and shot his ex-wife, Anita, multiple times. She died several hours later at the hospital. Petitioner was ultimately arrested and charged with two counts of first-degree murder, aggravated unlawful restraint, and home invasion and the case proceeded to a jury trial in DeKalb County, Illinois.

---

[1] On August 29, 2011, petitioner filed a petition for habeas corpus relief under 28 U.S.C. § 2254 (11 CV 50246). That petition was dismissed without prejudice on May 12, 2012, for failure to exhaust his administrative remedies. At the time, petitioner was still litigating his post-conviction petition in state court.

[2] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). While petitioner makes some arguments in his reply brief contesting the factual determinations, the court does not find the presumption of correctness rebutted.

A. Evidence at Trial.

At trial, petitioner's sister, Ruby Williams, testified at about 10:30 a.m. on April 23, 2002, she heard a woman at her front door calling for Anita. Anita and Anita's two-year-old son had been staying with Williams. When she went to the door, she saw a woman she did not recognize holding balloons. Williams then spotted petitioner hiding near the door and she quickly closed the door and locked it. She then yelled upstairs to Anita, who was preparing to take a shower, to call 911. Petitioner then broke down the door and ran up the stairs with a gun. Williams grabbed Anita's son and ran out the door to the neighbor's house to call 911. Before she left the house, she saw petitioner forcing open the bathroom door and Anita "begging for her life." Ellen Chandler testified she was driving a taxicab on April 23 and picked up the petitioner at a gas station. Petitioner told Chandler he wanted to surprise his wife with "a second Christmas." At petitioner's request, Chandler helped petitioner carry some things to the apartment, including balloons. Petitioner asked Chandler, with balloons in hand, to knock on the apartment door and ask for Anita. When Williams opened the door, Chandler noticed Williams spot petitioner who was hiding around the corner. Chandler testified Williams then slammed the door shut. Petitioner then broke down the door and forced Chandler into Williams' apartment with him. Chandler testified petitioner had a gun and forced her up the stairs of the apartment and into a bedroom where she could hear petitioner speaking with Anita in the bathroom. She also testified she heard a woman screaming and multiple gun shots. Inside the bedroom, Chandler called 911.

City of DeKalb police officers testified that when they arrived at the scene they were directed to the apartment by Williams who was screaming and very upset. Inside the apartment the officers safely removed Chandler and found Anita in the bathroom, covered in blood. Anita told the officers she had been shot and was dying. She told the officers, "Willie shot me." Anita died several hours later at the hospital.

Dr. Bryan Mitchell, the forensic pathologist who examined Anita's body, testified at trial that the body had multiple gunshot wounds with a total of 18 entrance wounds. He explained that a single bullet could cause multiple entrance and exit wounds if the bullet were to enter one part of the body, exit another part, and re-enter (and possible re-exit) another part of the body. Because of this, Dr. Mitchell could only say that Anita had been shot between 8 and 18 times. Dr. Mitchell further testified that some of Anita's gunshot wounds showed a presence of "stippling" - unburnt gunpowder particles discharged from the end of the gun and visible when the weapon is fired at close range. Dr. Mitchell testified that a wound to Anita's chest was likely the wound that caused her death. He identified stippling around this wound.

The ballistics evidence at trial revealed that 10 of the recovered bullets were fired from petitioner's 9 mm semiautomatic pistol. A recovered bullet fragment was of the same caliber as the other 10 bullets, but ballistics experts were unable to determine conclusively whether it had been fired from petitioner's gun due to its condition. The experts testified that all bullets had been fired from inside the bathroom.

A communications coordinator for the City of DeKalb also testified to the City's computed aided dispatch system (CAD system). The coordinator testified that information in the CAD system is entered manually. Because the information is not generated electronically, the times recorded on the CAD system report do not necessarily reflect the precise time the police officers performed the action.

Petitioner turned himself in to the police and made inculpatory statements. At the time, he was wearing clothing with blood stains that genetically matched Anita. At trial, petitioner represented himself.

The jury found petitioner guilty of first-degree murder and home invasion. The trial court sentenced petitioner to 60 years imprisonment for the murder consecutive to 25 years imprisonment for the home invasion.

B. Direct Appeal to the Illinois Appellate Court.

On direct appeal, petitioner made 16 arguments. He contended the trial court erred in (1) denying his motion to dismiss the grand jury indictment for perjury; (2) denying his motion for discharge for speedy trial violations; (3) denying his response to the state's fitness hearing; (4) granting the state's request to call the defense's expert; (5) excluding a police report at trial; (6) allowing the state to put on perjured testimony of multiple police officers; (7) refusing to admit a ballistics report at trial; (8) allowing the state to use evidence that was lost or destroyed in violation of *Brady*; (9) rejecting and excluding admissible documents; (10) excluding 911 telephone records from Verizon; (11) allowing the state to put on false and fabricated evidence; (12) denying his *Batson* challenge; (13) sustaining the jury's guilty verdict; (14) denying his motion for a new trial; (15) allowing him to represent himself at trial after he had been found unfit; and (16) aiding the prosecution with trial strategy.

The appellate court affirmed petitioner's conviction. Petitioner filed a *pro se* petition for leave to appeal to the Illinois Supreme Court, arguing that the appellate court abused its discretion in allowing the state to file time-barred pleadings, and allowing the state to utilize counsel whose license to practice law was suspended, in addition to many of the same arguments presented on direct appeal.

The Illinois Supreme Court denied petitioner's PLA on March 24, 2010.

C. Post-conviction Petition.

In November of 2010, petitioner filed a *pro se* post-conviction petition in the Illinois Circuit Court that alleged his rights were violated when the state prosecutors fabricated evidence against him and used this evidence in perjured testimony and arguments to convict him at trial.

Petitioner's *pro se* petition was not considered by the circuit court within the required 90 days, therefore, the petition was advanced to the second-stage. Following that, the state failed to file a motion to dismiss or answer the petition within the time allotted, and the petition then advanced to the third-stage by agreement of the parties and the court. Following a hearing on the

merits, the court dismissed the petition. Petitioner appealed, raising 12 issues, including arguments that his conviction was based on fabricated evidence and perjured testimony, procedural errors and the trial court's misapprehension of the evidence presented in the third-stage post-conviction evidentiary hearing. On November 3, 2015, the Illinois appellate court affirmed, finding each of petitioner's arguments forfeited because they were "unreasoned and unsupported by pertinent authority relevantly and properly invoked." The court went on to state that petitioner's claims "were either rejected on direct appeal, or could have been raised on direct appeal," therefore, petitioner was barred from relitigating them. Finally, the appellate court stated, "even had [petitioner] properly made his arguments on appeal, he simply did not demonstrate that the trial court's determination that he did not make a substantial showing of constitutional violation was in error."

The Illinois Supreme Court denied petitioner's PLA on March 30, 2016.

D. Federal Habeas Corpus Petition.

Petitioner's habeas petition raises the following grounds for relief:

(1) Petitioner's state and federal speedy trial rights were violated;
(2) Petitioner's due process rights were violated by police officer's testimony before the grand jury;
(3) Improper fitness evaluation triggered undue pretrial delays, thus violating petitioner's speedy trial rights;
(4) Police and prosecutors fabricated witness's 911 call;
(5) Wrongful exclusion of telephone records;
(6) State's general reliance on perjured testimony;
(7) State's firearm evidence was fabricated or perjured in violation of petitioner's due process rights;
(8) Trial court wrongfully excluded ballistics report;
(9) Trial court wrongfully admitted privileged expert testimony;
(10) Trial court wrongfully denied petitioner trial continuance;
(11) Trial court wrongfully excluded a police officer's report offered as impeachment evidence;
(12) Composition of jury was the product of systemic race discrimination;
(13) Trial court wrongfully found petitioner fit to stand trial; and
(14) State post-conviction courts failed to follow rules of state post-conviction law.

II. Analysis.

A. Applicable Law.

28 U.S.C. § 2254 limits a federal district court's ability to grant habeas relief to state prisoners. Relief will not be granted unless the court determines that a state court's adjudication of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts

in light of the evidence presented. . ." 28 U.S.C. § 2254 (d)(1)-(2). The federal courts review a state court's decision on a deferential standard of review. *Griffin v. Pierce*, 622 F.3d 831, 841 (7th Cir. 2010). A federal court may not grant relief if it determines a state court applied federal law incorrectly. Instead, a writ can only be issued if the federal court determines that a state court's application of federal law was "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000). "The issue is not whether [the] federal judge[] agree[s] with the state court decision or even whether the state court decision was correct. The issue is whether the decision was unreasonably wrong under an objective standard." *Dassey v. Dittmann*, __ F.3d __, 2017 WL 6154050 at *2 (7th Cir. 2017). This is a difficult standard for a habeas petitioner to prove as the Seventh Circuit has defined objectively unreasonable as "something lying well outside the boundaries of permissible differences of opinion." *McFowler v. Jaimet*, 349 F.3d 436, 447 (7th Cir. 2003).

Additionally, before a prisoner can bring claims to a federal court under 28 U.S.C. § 2254, the prisoner must comply with the statutory exhaustion requirement and present each of his claims in one full round of review in the state courts. *See* 28 U.S.C. § 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). Failure to exhaust available remedies in at least one full round of review in state court results in procedural default and a federal court cannot review the merits of the claim. *Mulero v. Thompson,* 668 F.3d 529, 535-36 (7th Cir. 2012); *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010).

The procedural default doctrine also bars review if the "claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law procedural grounds[.] . . . " *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). In other words:

> When the last state court to issue an opinion on a petitioner's federal claim has resolved that claim on an adequate and independent state ground, federal habeas review of the claim is foreclosed. Typically this occurs when the petitioner failed to comply with a state procedural rule and the state court relied on that procedural default to refrain from reaching the merits of the federal claim.

*Miranda v. Leibach*, 394 F.3d 984, 991-92 (7th Cir. 2005) (citations omitted).

Procedural default may be excused if a petitioner can show either cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that the failure to consider the claim will result in a "fundamental miscarriage of justice." *Smith*, 598 F.3d at 382. "Under this cause-and-prejudice test, a cause is defined as, 'an objective factor, external to the defense, that impeded the defendant's efforts to raise the claim in an earlier proceeding.' Prejudice means, 'an error which so infected the entire trial that the resulting conviction violates due process.'" *Id*. (citations omitted).

5

B. State Law Claims not Cognizable.

First, respondent argues that a number of petitioner's habeas claims are not cognizable for purposes of § 2254 habeas review. Specifically, with regard to petitioner's argument that his state law speedy trial rights were violated (claim 1), an improper fitness for trial evaluation triggered a violation of his speedy trial rights (claim 3), the trial court wrongfully excluded telephone records (claim 5), the trial court wrongfully excluded a proffered ballistics report (claim 8), the trial court wrongfully admitted privileged expert testimony (claim 9), the trial court wrongfully excluded a police report as impeachment evidence (claim 11), and the state courts failed to follow rules of state post-conviction law (claim 14), respondent argues these claims are not cognizable because they rest solely in state law. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (inquiry into state court rulings plays no part in federal habeas corpus review; "…it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). *See also Burris v. Smith*, 819 F.3d 1037, 1042 (7th Cir. 2016) (plaintiff failed to show that his claim in any way violated U.S. Constitution such that it would be appropriate for federal habeas relief). Here, to the extent petitioner asks this court to examine state law, his claims are not cognizable.

Additionally, habeas relief for an erroneous evidentiary ruling is only available if it is so prejudicial as to violate a defendant's due process rights, such that there is a "significant likelihood that an innocent person has been convicted." *Anderson v. Sternes*, 243 F.3d 1049, 1053 (7th Cir. 2001) (internal quotations omitted). Here, petitioner's arguments that the trial court "abused its discretion" do not arise to this standard, and the nature of the evidence allowed is not of the type that could satisfy the standard. These claims are not cognizable and are denied.

C. Claims Procedurally Defaulted.

Next, respondent contends that claims 1, 3, 7, 8, 10 and 13, each are procedurally defaulted because they were not adequately briefed in state court.

To avoid procedural default, petitioner must present his claims to all three levels of the Illinois courts, trial, appellate and the Illinois Supreme Court. In order to do so, petitioner must present to each court the same "operative facts and the legal principles that control each claim" that the petitioner seeks review of in his federal habeas petition. *See Bolton v. Akpore*, 730 F.3d 685, 695 (7th Cir. 2013). A procedural default occurs when a state court disposes of a claim on independent and adequate state law grounds. *Johnson v. Loftus*, 518 F.3d 453, 455 (7th Cir. 2008). Additionally, "[a] state is entitled to treat as forfeited a proposition that was not presented in the right court, in the right way, and at the right time – as state rules define those courts, ways, and times. Failure to comply with the state's procedural rules furnishes an independent and adequate state ground of decision that blocks federal collateral review." *Szabo v. Walls*, 313 F.3d 392, 395 (7th Cir. 2002).

As to claim 1, the appellate court on direct appeal found petitioner failed to present any argument relating to his constitutional speedy trial violation, or provide any analysis of the factors set forth in *Barker v. Wingo*, 407 U.S. 514 (1974), which provides the criteria for

evaluating a constitutional speedy trial claim. Therefore, the appellate court found petitioner had forfeited this issue on appeal. Regarding claims 3, 8, 10, and 13, the appellate court on direct appeal found in each that petitioner failed to properly cite to the record or to pertinent authority to support his arguments. In support of its ruling, the appellate court cited to Illinois Supreme Court Rule 341(h)(7) which provides, in part, that appellant's brief shall contain "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citations of the authorities and the pages of the record relied on." The appellate court further cited to *People v. Johnson*, 365 Ill. App. 3d 585, 608 (1st Dist. 2008) for the proposition that an issue on appeal is forfeited where the party fails to provide argument on that point. The state appellate court's decision regarding petitioner's procedural default of each of these claims blocks any federal collateral review, as set forth in *Szabo*.

As to claim 7, to the extent this claim (false firearms evidence) is based on written reports that were not admitted at trial, the appellate court, both on direct appeal and appeal of petitioner's post-conviction petition, addressed petitioner's claims of fabricated or perjured evidence at trial. After examination of the record, the appellate court denied petitioner's claims as procedurally defaulted. In affirming the trial court's judgment denying petitioner's post-conviction petition, the court stated: "defendant fails to link the legal principle or black-letter law set forth to the circumstances of his case, the evidence admitted at trial, or the evidence adduced in the third-stage evidentiary hearing. Defendant further fails to construct a pertinent and coherent argument despite his citation to authority that could be relevant to his claims."

After reviewing the parties' briefs, the court does not find that petitioner's procedural default can be excused either by showing cause and prejudice or that absence of review would result in a fundamental miscarriage of justice. See *Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991). Therefore, this court denies petitioner's claims as procedural defaulted.

D. Claims Barred as Adjudicated on the Merits.

Finally, respondent argues petitioner's claims concerning perjured grand jury testimony (claim 2), fabricated 911 call (claim 4), general reliance on perjury (claim 6), and systemic exclusion of African-Americans from venire (claim 12), are barred by 2254(d) as adjudicated on the merits in state court with reasonable application of the law.

The Supreme Court has held "[a] habeas petitioner meets th[e] demanding standard [of § 2254(d)] only when he shows that the state court's decision was 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Dunn v. Madison*, 138 S.Ct. 9, 11 (2017) (per curiam) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Additionally, in seeking federal habeas relief where the claims were previously adjudicated on the merits by a state court, petitioner is limited to the record that was before that state court. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

A review of the state court record in petitioner's direct appeal and petitioner's post-conviction appeal reveals the appellate court considered each of petitioner's arguments in claims 2, 4, 6, and 12. Petitioner's related claims 2 and 6 address the use of perjured testimony at the grand jury and at trial. Petitioner argues in claim 2 that the trial court erred in denying his

motion to dismiss his indictment based on perjured testimony before the grand jury by a police investigator, and in claim 6 that the trial court erred in allowing the state to use perjured testimony generally. In support of these claims, petitioner cites *Napue v. Illinois*, 360 U.S. 264 (1959). Under *Napue*, petitioner must show that (1) the prosecution's case included perjured testimony; (2) the prosecution knew, or should have known, of the perjury; and (3) there is any likelihood that the false testimony could have affected the judgment of the jury. *Id*. 269-70. Additionally, "[m]ere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." *Ashburn v. Korte*, 761 F.3d 741, 758 (7th Cir. 2014). This court's review of the record reveals the appellate court thoroughly analyzed petitioner's arguments and found petitioner failed to argue any prejudice accrued from the purported perjured testimony because any inconsistencies in the witnesses' testimony at grand jury and at trial did not constitute perjury. Additionally, as to claim 2, the appellate court held there was no evidence to support a conclusion that the grand jury would not have indicted petitioner for the crimes but for that testimony.

In claim 4, petitioner argues the trial court erred by erroneously excluding Verizon Wireless telephone record which, purportedly, would have demonstrated that witness Ellen Chandler's 911 telephone call was fabricated by the state. The appellate court found that the trial court properly excluded the telephone records based on petitioner's failure to lay a proper foundation for their admission. Petitioner did not present the appellate court with any legal argument addressing the deficiency in the foundation requirement. This court does not find the appellate court's holding that the trial court did not err in precluding the admission of the Verizon telephone records to be unreasonable.

Lastly, petitioner presents an argument in claim 12 that because no African Americans were included within the pool of potential jurors, the composition of the jury was the product of systematic race discrimination. The appellate court noted that petitioner, essentially, raised a claim pursuant to *Duren v. Missouri*, 439 U.S. 357 (1979). In order to make a claim under *Duren*, petitioner must show: (1) the group alleged to be excluded is a distinctive group within the community, (2) the group's representation in the venire is not fair and reasonable in comparison to the group's representation in the community, and (3) the under-representation is due to systematic exclusion in the jury selection process. *Id*. at 364. Under the *Duren* test, the appellate court found petitioner failed to offer any evidence to show the percentage of African Americans residing in DeKalb County, or that failing to have any African Americans in the venire was anything other than chance. Additionally, the court went on to find that petitioner brought no argument that the exclusion of African Americans from the jury was due to systematic exclusion in the jury selection process. *Davis v. Warden, Joliet Correctional Institution at Stateville*, 867 F.2d 1003, 1006 (7th Cir. 1989) (while petitioner was able to establish that African Americans are a distinctive group in the community, he failed to establish that underrepresentation of African Americans on venire was due to systematic exclusion in jury selection process).

Regarding claims 2, 4, 6, and 12, this court finds petitioner's claims were adjudicated on the merits and the appellate court's decisions were not an unreasonable application of established federal law, nor were they based on unreasonable determinations of the facts in light of the

evidence presented in petitioner's state court proceeding. Therefore, these claims are denied as barred by § 2254(d).

For the foregoing reasons, petitioner's claims are either not cognizable under 28 U.S.C. § 2254 because they rest solely in state law, were procedurally defaulted, and/or were previously denied on the merits by the state court. Therefore, all of petitioner's claims are denied.

E. Certificate of Appealability.

Pursuant to Rule 11(a) of the Rules Governing § 2254 Proceedings For the United States District Courts, the court declines to issue a certificate of appealability. A certificate may issue only if defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The court finds that while defendant has attempted to raise constitutional claims, his claims are not cognizable, procedurally defaulted or otherwise without merit, and the court does not find that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *See Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014) (quotations omitted). As such, the court declines to issue a certificate of appealability. This matter is terminated.

Date: 12/27/2017                    ENTER:

*Philip G. Reinhard*
United States District Court Judge

Notices mailed by Judicial Staff. (LC)

9